to see is let's not do that again. How did you wind up on the phone? Good morning, Your Honor. May it please the court. I'm Glenn Langley, and I represent the Bossier Sheriff and Bossier Sheriff defendants in this matter in preparing for this argument. And I realized how massive a case this was throughout this investigation. Over 60 incidents spanning a period of over a spanning two sheriffs, at least two chiefs of detective and any number of investigators throughout this case. Um, it reminded me of the Buddhist parable. The form it brought into a room and asked for blind men asked to tell the people who what they were feeling in the room, and it was an elephant. And one fellow said, Well, this is a rope, and he had the tail, and he had the leg, and he had the trunk. And he said, it's a leg is a tree in the trunk is a snake in the side of the elephant's a wall. It's important, I think, for the court to realize that in hindsight, which is the way we have to view or we view most investigations in hindsight, the picture is much different than it is while we're feeling the different parts of the elephant in a dark room. That metaphor suggests to me this goes to trial. I'm sorry. Excuse me. Metaphor suggests to me it is a case that goes to trial. If it would, if we were looking at the whole the case in hindsight. But if we look at it when in the eyes of the investigator as he was going through the case, and we that's the case that that's the perspective that I think the court has to apply here, because when Detective Blitz testified at the 404 B hearing and when he was investigating these things that were happening, we have to look at what was in his mind. And while it may be clear when Chief Huddleston had the follow up investigation later on, which he put together a timeline, 52 pages worth of incidents and things that happened over the period of time, it wasn't until then that the real perspective came in. So when Detective Blitz testified at the 404 B hearing, his perspective was different because there are a lot of things that he didn't know. It's also important for the court, I think, to realize today that there is a text from Blex making clear that he was really sort of had an agenda to try to go after Phillips. That was after he was off the investigation when he was still in contact with what was at that time a source of information, but which ultimately turned out . . . Right. But it's an inference that his activities were something less than a pure search for the truth. Your Honor, that's the way one has to handle from time to time informants and sources of information. There is no evidence that he shaded the truth in any way. He was telling the . . . He's buttering up the informant. Is that the idea? That's it, Your Honor. And that's the way to handle the informant. So he was encouraging the informant. And, in fact, when we look at the record, there were two instances, and only two instances, on which the plaintiff was . . . a warrant was issued for the plaintiff. And one of them . . . He's encouraging the informant to do what? Encouraging him to continue to provide information, Your Honor, to encourage him to tell the informant that we're listening to you and if you'll tell me what you have to . . . what knowledge that you have, we will use that in our investigation. And, in this case, the informant turned out to be the bad guy. The informant was misleading law enforcement. The informant was providing false clues pointing at the plaintiff. And, at that time, we didn't know that. And Lieutenant Blitz was believing that . . . So the encouraging to tell me more is not to be misconstrued as encouragement to make stuff up, if it helps my theory. Absolutely not, Your Honor. All right. And, also, as I was saying, Your Honor, the warrant was for two particular instances. And this is important, and we'll get to it in a minute. The warrant was issued for two of the 70-some-odd acts of vandalism or arson. One of them was for Gary to encourage Mr. Wilson to talk about information that he was gathering so that the perpetrator of that piece of arson could be brought to justice when it turns out that he had possibly burned his own tree stand. Your Honor, this is a massive and convoluted case. And one can see that, over this course of this investigation, mistakes can be made. And mistakes were made. There's no doubt about that. But one cannot expect that no mistakes would be made over this period of time. However, the Court can't attribute knowledge discovered and connections made by investigators at a later time to the investigator at the time that the investigation was going on. The bad guy here, Gary Wilson, framed Todd Phillips. He's responsible for this tragedy. He was actively, throughout this period of time, misleading law enforcement, providing false clues, deceiving law enforcement, not only law enforcement, but also the plaintiff and the public. Phillips, now the plaintiff in this case, is attempting to put the blame on the real perpetrator. So even if mistakes were made, Your Honor, one has to understand that the investigators at the time were doing the best they can. This is precisely the kind of situation that qualified immunity is designed to apply to. The Court has to look at the reasonableness of the action that was taken at the time that it was taken. Lieutenant Blitz is entitled qualified immunity on the false arrest claim because probable cause did exist. I think the lower court did a great job in sifting through an absolute mountain of evidence, wrote a great opinion, but I think where the lower court went wrong was the lower court focused on this, as far as I can tell, unique situation where the probable cause was based not on an affidavit given to a judge, but a five day evidentiary hearing in which both sides had an opportunity to put on evidence to counter the allegedly false statements made by the investigator. The investigator was on the stand. They enumerate in their brief many points that he says that they say he testified falsely about, but as to each and every one of them, counter evidence was put on and cross-examination was conducted by Mr. Phillips' counsel. Unique in this situation, there was no affidavit submitted ex parte to a district court judge. The district court judge heard both sides of the argument and that what the district court in ruling on this summary judgment didn't do was he said we can't parse the lines of the affidavit as we ordinarily would in determining whether or not there was sufficient probable cause apart from the allegedly false statements to support probable cause. He said there's just too much. Now, I don't think he has to do that. First of all, because it's the plaintiff's burden of proof to show that this was malicious. I don't think that they meet that burden of proof. Secondly, the trial judge in the state court action already did that. He made credibility assessments. He heard all of the evidence. Moreover, Your Honor, when it came time to rule on the 404B hearing, what he was ruling on was the admissibility of those things in an eventual criminal trial. The purpose of the 404B hearing was not to support a future warrant. The alleged misstatements made by Lieutenant Bletch have nothing to do with the two crimes or the two So the alleged misstatements talk about all sorts of things. They talk about whether or not the dogs could be there. Could anybody get in their trash? Was this a grape bottle or was it some other flavor? Did this syringe come from us or not? And then he talks, they talk about some other things that happened after the 404B hearing. But the alleged misstatements, the alleged falsehoods at the 404B hearing did not have anything to do with the two instances of arson. One was Mr. Wilson's tree stand and the other one was Mr. Kaysen's tree stand. Those were the things that ultimately the warrant was issued on. So we have two different standards, Your Honor. We have the 404B standard, which is at some future trial, is this going to be admissible into evidence? And the other is whether or not there was sufficient evidence before the court to issue, was there was probable cause to issue the warrant. So Lieutenant Bletch, we think, Your Honor, is entitled to qualified immunity as the false arrest claim because a neutral intermediary, the district court, listened to the facts, listened to the facts on both sides, which is something a criminal defendant often doesn't have the chance to do, very seldom does, and then issued a warrant. Probable cause doesn't require that it be even be more probable than not, only that there is a fair probability. There was sufficient evidence in the record, Your Honor, to support a warrant. The court must find not even arguable probable cause for the arrest. I think Judge Doty missed the fact that there was arguable probable cause for the issuance of the warrant when he made this ruling on this summary judgment. The arrest warrant was issued by the district court, found probable cause when the arrest warrant was issued, even if the officer seeking the warrant acted maliciously or with evil intent or bad faith, the warrant insulates the malicious action. The other thing we have to remember, Your Honor, is that Lieutenant Bletch did not issue the warrant here. The district attorney did. Lieutenant Bletch did not make a representation in an affidavit to the district court judge. The district attorney did. He did not make the alleged misrepresentation in the context of the issuance of the warrant. The intermediary's decision, after hearing both sides of the evidence, again an unusual occurrence, I think breaks the The plaintiff alleged that the judge's finding was tainted. Judge Thompson's finding was tainted. To overcome probable cause where a warrant is issued, the plaintiff has to show a proven misstatement by a person seeking the warrant and that is necessary to the court's finding of probable cause. In affidavit cases, we could stretch out the alleged lies and see if there's enough left to support probable cause. Here we don't have to do that because the judge again heard both sides of the testimony and proof that it was made deliberately or recklessly. Those are the plaintiff's burdens to overcome qualified immunity. And we submit, Your Honor, that those burdens haven't been met. Recklessness requires proof that the defendant in fact entertained serious doubts as to the truth of the statement when he made it. There's no evidence that Lieutenant Blitz entertained serious doubts as to those statements. There's no proof of his state of mind as to what that was, what those statements were when he made those statements. We don't have to analyze whether or not they determined what there would be probable cause. But if we do, every analysis that we've been able to find on consideration of whether an officer withheld information in seeking a warrant assumes that the officer being sued is the one who made the false statements and was the one who presented the evidence to the judge and sought the warrant. Again, Lieutenant Blitz did not seek the warrant, nor is there any evidence that he knew the district attorney was going for a warrant. At the time of the for criminal damaged property, which is a misdemeanor. The district attorney, D. A. Holland, special district attorney who was hired for this purpose, offered the entire 404 be hearing and support a hearing in which the plaintiffs, of course, were entitled to cross examination and put on their own defense. The neutral intermediary heard Blitz's testimony and cross examination and still found that there was probable cause and that the evidence, the 404 B evidence could be admitted at an eventual trial. Every bit of evidence that they say Bruce Blitz lied about, they were able to produce countervailing evidence at the 404 B hearing. They have to also show that the evidence that he allegedly lied about served as the basis for the issuance of the warrant. And your honors, I don't think that they can show that. I don't think that any of the evidence that he allegedly lied about applies to the two instances of arson that the warrant was eventually issued on. Now, plaintiffs argue that Judge Thompson's finding of probable cause was tainted because he was not informed of the exculpatory evidence, even though there was no Brady duty. First, Judge Doty says there's no Brady duty on this particular defendant, on Lieutenant Blitz. But then he says he failed to produce exculpatory evidence. But to produce exculpatory evidence, your honors, one has to know that the evidence is exculpatory. The 2015 incident where Gary Wilson was alleged to be a suspect occurred two years before the task force tied Gary Wilson to all of these crimes. The 2015 incident was not an arson case, was not a deerstand case. It had nothing to do with hunters. And Lieutenant Blitz was not the investigator on that case. So it was impossible for him to know that the 2015 case was tied to Todd Phillips. It was impossible for him to know that the 2015 case would be exculpatory. Now, one of the investigators at the time said, we like Gary Wilson for this. And Lieutenant Phillips, who was not the investigator, but was a supervisor of that investigator, said, yeah, I like Todd Phillips for this. But there was no link until two years later. So was that exculpatory? Your honor, there was no way for Lieutenant Blitz to know it was exculpatory at the time that he was alleged to have, or he was supposed to have, told the trial court this, even if he knew that the trial court was considering a warrant, which he didn't. The evidence appeared to be, excuse me, exculpatory now in hindsight. There's now evidence that Gary Wilson was involved in this throughout, but there's nothing in the investigation to make it exculpatory until years later. Your honor, there's also a problem with broadening the definition of exculpatory evidence to include such things as what the plaintiff wants to do so here. And that problem is, is that if one broadens the definition of evidence to include all acts of vandalism within a geographical area that occurs about the same time that other acts of vandalism occurs, for which Mr. Phillips, in this case, was the principal suspect, then law enforcement in effect would be shut down. What we'd have to do is create a website, put this evidence up on the website, and everybody could look at it. Or we'd have to collect it, and every time we'd go in for a warrant, we'd have to submit evidence of all vandalism that occurred in North Bossier Parish during this particular period of time. There has to be something more, your honor. Such investigative matters are exempt from the disclosure under the public records doctrine. There's an important secrecy issue, your honor, during the investigation, and to force law enforcement to disclose these sorts of things would bring things to a halt. Moreover, your honor, the rule at the time was not that this disclosure had to have been made. The rule at the time was that clearly exculpatory evidence had to be submitted to the independent intermediary. And when one considers whether or not qualified immunity should apply, then one has to determine whether or not the rule that is allegedly violated was clearly established at the time. And we submit that it was not, your honor. I'd like to take what time I have remaining for rebuttal, your honor. But I would like to say that Mr. Jackson thanks the court and asked me to thank the court for consideration. He couldn't be here today because of a family emergency. Thank you, Mr. Langley. Ms. Buckle? May it please the court. The district court found in this case that there are genuine issues of material fact as to whether Lieutenant Bletz intentionally lied or recklessly disregarded the truth, that there's a genuine issue of material fact as to whether Lieutenant Bletz failed to disclose exculpatory evidence to the state court. Those are genuine issues of material fact that were found by the district court that this court respectfully does not have that decision was correct. This is not a situation in which the materiality of those facts should be an issue. And the court does not have the ability to assess the district court's determination of that genuineness. So with respect to the claims that the false arrest claims against Lieutenant Blitz, we do believe that decision should stand. Where we do believe the district court went wrong was with respect to the false arrest claim and as well as a malicious prosecution claim against ADA Hugo Holland. As counsel just acknowledged, this is an extensive case. It's a very fact-intensive case. If there was ever an issue of fact, respectfully, I would believe that this case presents that to you. This is not a case that can be decided as a matter of law. In this case, what the district court failed to recognize when it was reviewing the claims against ADA Holland is the knowledge that ADA Holland did have. He did know that Lieutenant Blitz was making false statements or misstatements to the district court. We have the Powerade bottle that ADA Holland allowed Lieutenant Blitz to testify that because of the weather and the elements that the label had been destroyed such that you could not determine what color the Powerade bottle was. Yet ADA Holland was in possession of the Powerade bottle and knew that it was in pristine condition and had not been destroyed by the elements. ADA Holland was also a representative of the DA's office. He knew that Lieutenant Blitz made misstatements when it came to the meeting with Dr. George Seiden. We have testimony from DA Scholar Marvin that said he was confident that that meeting did not occur until after the signs were placed. Yet ADA Holland allowed Lieutenant Blitz to incorrectly testify that the signs or the posters were placed only after the advice of Dr. Seiden. That again was incorrect. ADA Holland was also in possession of the recorded interview between Lieutenant Blitz and Mr. Todd Phillips after the search warrant was executed. ADA Holland was in possession of that recording and knew that Lieutenant Blitz's description of the interview was incorrect. He knew that Mr. Phillips did not have a motive as described by Lieutenant Blitz. He knew that Mr. Phillips was not the one to suggest that it was a purple Powerade bottle. This was all information in ADA Holland's admittedly new of that task force. And I think this is where his obligation under Brady is important to recognize too because ADA Holland had a duty to learn of all favorable evidence. And I think this goes to the genuine issue of material fact in that there is sufficient evidence from which one can infer that ADA Holland was the person responsible for instructing the investigation. That is a violation of his Brady obligations and we submit that that should be a fact issue as to whether that was reckless disregard for the truth. In this case he is only entitled to qualified immunity and there is sufficient evidence that from one can infer that he did in fact recklessly disregard the truth in this case. With respect to both Lieutenant Blitz and ADA Holland, Counsel for Sheriff's Office argued that there was still sufficient evidence to issue a warrant and that the testimony from the five-day hearing was also gave Mr. Phillips' counsel an opportunity to present evidence. Respectfully that argument ignores the fact that any criminal defendant has the presumption of innocence. It is not a defendant's responsibility prior to arrest to prove his innocence. It is the job of the detective, of the officer, of the prosecutor to review the evidence and to evaluate it. In this case Lieutenant Blitz failed to do that duty as the district court correctly recognized that there's an issue of fact on and ADA Holland disregarded, recklessly disregarded the truth by looking at the evidence that was in front of him and blindly listening to Lieutenant Blitz and taking his allegations for fact. This is akin to a situation in which the case is submitted to a grand jury and there's an indictment returned. That's the same Lieutenant Blitz testimony to the state court at the 404B hearing is the same as would be the same as his grand jury testimony. He cannot escape culpability by arguing that he wasn't the one that actually presented the case to the state court. The US Supreme Court and Franks and this court and I believe it's Melton versus Phillips again recognize that if you are prepare the affidavit or if you provide information to be used in the affidavit for a warrant you're subject to liability. In this case Lieutenant Blitz certainly provided all of the information that was used and ADA Holland essentially prepared the affidavit and swore to those facts as true when he submitted the motion and request for an arrest warrant. Does the court have any questions as to the claims against ADA Holland? We next have the where plaintiffs believe the court the district court erred was with in denying summary judgment on plaintiffs failure to intervene claim against Captain Phillips. With all due respect to the district court again we believe that this is an issue of fact that cannot be decided as a matter of law. Captain the district court did recognize that Captain Phillips was involved in this investigation from the very beginning from at least 2012 he was the supervisor over the detectives division and he was present when the search warrant was executed. Detective Lombardino testified that he personally advised Captain Phillips of the his suspicions that Gary Wilson had committed offenses that occurred in March and June of 2015. Captain Phillips had a responsibility to review the work of his subordinate Lieutenant Blitz and he failed to do so. More than simply failing to do his job he had actual knowledge he cannot dispute the testimony of Detective Lombardino or Detective Lombardino advised him that he had identified Gary Wilson had suspicions of Gary Wilson and Captain Phillips did nothing. That is a failure to intervene it's a failure to protect the constitutional rights of Mr. Todd what are you suggesting he should have done? He should have allowed Detective Lombardino to continue investigating he should have made sure that that information was presented to the prosecutor. And so he he advised him to stop investigating Wilson? He he did nothing he allowed Lieutenant Blitz to make the decision to inactivate the case and instruct Detective Lombardino not to investigate further and Captain Phillips implicitly agreed with that decision. So he implicitly agreed? I mean he he ratified the decision he did he Detective Lombardino went to him expressed his concerns and Captain Phillips stood by Lieutenant Blitz's decision. How many officers report to I believe and I'd have to go back and look at his deposition I believe maybe 15 or 20. I take it Captain Phillips's position is he can't know everything that's going on he's got to trust his officers and you know at most he might have done more to oversee but this is a negligence case not a knowledge case. I disagree your honor I think when you have the testimony of Detective Lombardino where he specifically went to Captain Phillips and told him of his concerns. We've got a supervisor who I'm talking about Captain Phillips here who's being told different things by his subordinates and he has to make a call and in this case he may have deferred to the wrong person but that's different from knowledge isn't it? I don't believe so Detective Lombardino was the one he had assigned to the case to this offense. Detective Lombardino was the only one investigating the offense. Lieutenant Blitz had not investigated the offense. He had not had an opportunity to clear Gary Wilson as Lieutenant Blitz did. Pardon me I should know this what's the hierarchy here is Lombardino works for Blitz or are they more than co-workers? At that time I believe Lieutenant Blitz was still of higher ranking but he had already been advised that he was going to be transferring out of the detectives to internal affairs. This and this all happened in the between March and June of 2015. One of the incidents did occur in June of 2015 when Detective Lombardino went to Lieutenant Blitz and Captain Phillips which is the same month that the citation was issued to Mr. Todd Phillips and Detective Lieutenant Blitz is the one that defined the scope of this criminal activity. He is the one that defined the scope as being all acts of vandalism occurring in this area. He had actual knowledge and Captain Phillips had actual knowledge. It's their testimony that they believed all of these things were related yet when Detective Lombardino who Captain Phillips assigned to invest investigate came to him and expressed his concern that he had that was a potential suspect Captain Phillips with that actual knowledge took no action and allowed a subordinate who was not involved in the investigation of that incident to clear the confidential informant and inactivate the case. That also leads us into the Monell claim for negligent supervision which we believe the district court aired and we think there's a genuine issue of fact on that issue. This isn't merely a case of negligent supervision. When you look at the deposition testimony of Captain Phillips there was essentially no supervision. There had previously been a procedure where all the detectives had to submit their reports prior to it going to the district attorney's office which is a good policy and procedure in order to protect the rights of citizens. When Captain Phillips took the position that procedure went away. He never reviewed the offense report in this case which was 60 plus incidents that the sheriff himself admitted was one of the highest high most high profile cases to ever occur in North Bossier Parish and the supervisor over the investigation division investigations division did nothing. There is no one in Lieutenant Blitz's chain of command that reviewed it. Took any steps to ensure that any additional evidence was found after June of 2013 when the district attorney himself acknowledged there was not in to ensure that additional evidence had been found. Had anyone stepped in they would have acknowledged that they still had nothing but the green Coleman gas can that you can buy at Academy with black lettering black marker written on it and trash. That was all they had prior to June 2013 when DA Marvin said there was not sufficient evidence and after. We also believe that there's a material fact as to the Monell claim on withholding exculpatory evidence when you look at the Bosier Parish Sheriff Sheriff's Office policy explicitly states that they are only to turn over evidence that would aid in conviction. We think that when you could look at all of the facts in this case and the numerous incidents that occurred in the information that was not provided it shows that they clearly clearly were acting in accordance with that policy. I see my time is up on behalf of plaintiffs. We do respectfully ask that the court affirmed the decision of the district court and denying summary judgment against lieutenant let's on the claim of false arrest claim, but we would ask that the court reversed the decision and reinstate the following claim the claims against Hugo Holland for false arrest and malicious prosecution the failure to intervene claim against Captain Phillips and the failure to withhold. I'm sorry withholding exculpatory evidence. Thank you. Thank you, Miss Buckle. Roboto make this as brief as possible. I'll start at the end and move backwards. The Bosier Sheriff's policy does not say that the Bosier Sheriff is to turn over only those things which would support conviction. The only was added by the plaintiff. Unfortunately what the policy says is well, but it does say so turn over everything you have says any other documentation related to the case that would aid in a conviction. It does say that you're on. No question about that. But it also in practice as the court is aware from the record is that everything is turned over everything that is related to the prosecution, including exculpatory evidence, everything. The whole file is turned over to the D. A. For the D. A. To make of determining whether or not the Bosier Parish policy says don't turn over anything that is not exculpate that is exculpatory or don't turn. It doesn't say that I'm not quibbling. It doesn't say don't doesn't and it doesn't say only don't don't turn over. It doesn't say only those things. No problem. I'm looking right at it. It doesn't say also, Your Honor, um, to say that there was no supervision. No one stepped in to ensure the investigation would continue. Remember, Your Honors, that the only way that Gary Wilson was eventually caught and the charges against Mr Phillips dismissed was a subsequent task force. When other instances of letters came to light that had been sent and the sheriff's office, even though there was a warrant for Mr Phillips on, he had been charged with those two instances. The sheriff's came forth and conducted another task force, a fresh set of eyes, a new investigator. Um, and so to say that that the investigation of the 2015 incident or the investigation of subsequent instances, uh, would put on the shelf in favor of prosecuting Mr Phillips simply isn't true. And finally, Your Honor, um, the instances of alleged false testimony, uh, really don't have anything to do with what Mr Phillips was ultimately charged with. As I said in the beginning, um, the only thing that Judge Thompson didn't know about, the only thing he didn't know about that had occurred at the time he grave incident where there was a grave and a tiger trap built out in the woods with D. A. The days name on it and judge that was not presented to Judge Thompson. But Lieutenant Bletch didn't know anything about that one part of that investigation. It wasn't within his purview. He was in I. A. At the time. And so I think it would be unfair to deny him qualified immunity based on that lack of knowledge. Thank you for your patience. I appreciate this. And I'm just curious. What's the status of the criminal prosecution against Gary Wilson? He's out on bond and he's waiting to try waiting trial. Is it scheduled? It is not scheduled. I don't believe your honor. Um, and of course, footnote, tragic footnote. His wife and son committed a joint suicide by jumping off a bridge into the Red River after his arrest. A stranger case seldom comes along. Your honors. Thank you for your patience. Thank you. Court will take this matter under advisement. That concludes the matter.